PARKER *v.* HADLEY.

5-1017 296 S. W. 2d 391

Opinion delivered December 17, 1956.

*Mahony & Yocum,* for appellant.

*Spencer & Spencer; Lawrence S. Morgan,* for appellee.

PAUL WARD, Associate Justice. The only question presented by this appeal is whether the chancellor's finding is contrary to a preponderance of the evidence.

Alfred Hadley died several years ago seized of approximately 500 acres of land in Union County, leaving surviving him as his only heirs the following named three children: Alabama Parker, a daughter, and C. B. H. Hadley, a son (appellants herein); and C. Minor Hadley, a son. This, of course, gave each of the children of Alfred Hadley an undivided one-third interest in the above mentioned land.

C. Minor Hadley died in 1949, and later appellee, Lola Hadley, claiming to be the sole surviving heir of C. Minor Hadley, brought a partition suit in the chancery court against appellants asking for her share of the rents and profits accruing from said land, and that the land be divided in kind or that it be sold and the proceeds be divided equally among the three of them. Appellants' answer denied that appellee was the daughter of C. Minor Hadley. The trial court held in favor of appellee, hence this appeal.

Appellee was the illegitimate daughter of C. Minor Hadley who later, on February 22, 1947, married appellee's mother. For a reversal appellants rely on only one Point which they state as follows: "Lola Hadley was not recognized by C. Minor Hadley as his child." To state the question properly and in accordance with the arguments made by appellant, we think the Point should be stated in this way: Lola Hadley was not recognized by C. Minor Hadley as his child after his marriage to her mother.

The pertinent statute involved is Ark. Stats. § 61-103 which reads as follows:

"If a man have by a woman a child or children and afterwards intermarry with her, and shall recognize such children to be his, they shall be deemed and considered as legitimate."

Both appellants and appellee correctly agree that there must be recognition after the marriage.

Also appellants and appellee agree that the statute requires proof of three things, to-wit: (1) The actual parentage of the putative father; (2) The putative father's marriage to the mother of the illegitimate child, and; (3) Recognition by the putative father, after the marriage, of the child as his. Appellants do not question the proof to establish (1 & 2) above.

After a careful examination of the record we have concluded that the weight of the evidence sustains the chancellor's finding that C. Minor Hadley, after his mar-

riage to appellee's mother, recognized her as his child. The only testimony introduced by appellants was that given by themselves, and it contains no positive evidence that appellee was not so recognized by C. Minor Hadley. On the other hand we have this testimony offered by numerous witnesses on behalf of appellee to the effect that C. Minor Hadley did, after his marriage to appellee's mother, recognize her as his daughter: Lizzie Roy, age 81, testified that she visited in the home of C. Minor Hadley after his marriage to appellee's mother, and that he told her he was going to try to get his girl (referring to appellee) home and help her; Mitchell Adams testified that he talked with C. Minor Hadley after his marriage to appellee's mother and that on one occasion Hadley stated that he was Lola's daddy and that he was going to send after her, and wanted to give her something; Arbella Twine stated that she talked with C. Minor Hadley, after the marriage, and that he said Lola (appellee) was his daughter and he wanted to make provision for her to have something after his death, and; Appellee testified that she received letters from C. Minor Hadley, after the marriage, addressed to her as "Dear Daughter," and signed "your father."

In view of the above we are forced to conclude that the finding of the chancellor was supported by the weight of the testimony.

Affirmed.