EDGAR *v.* DICKENS.

5-1766                                    320 S. W. 2d 761

Opinion delivered February 9, 1959.

*F. C. Crow,* for appellant.

*McMillan & McMillan,* for appellee.

J. SEABORN HOLT, Associate Justice.    Appellants
say: "The question involved in this case is: 'Who are
the heirs of Claude Edgar?'." Claude Edgar died intes-
tate November 11, 1957, never having been married.   Ap-
pellants claim to be his paternal half brothers and sis-
ters and his heirs at law.   Appellees, on the other hand,
who are admittedly his maternal half brothers and sis-
ters, deny that appellants have any claim to Claude's
estate.   The trial court, after a patient and extended
hearing, (compiling a record of 275 pages) denied appel-
lants' claim and this appeal followed.   Only a fact ques-
tion is involved and, after reviewing the testimony, we
have concluded that the court's findings of facts are not
against the preponderance of the testimony, and that its
conclusions of law applicable thereto are correct.   We
set out the trial court's opinion as follows:

"Statement. This is a hearing to determine heirship. Claud Edgar died on November 11, 1957. His estate is being administered by his former guardian, Honorable L. L. Mitchell, under the authority of Section 57-644, Arkansas Statutes (1947), Pocket Supplement. The issue involved here is who constitute the heirs of the decedent. Claud was never married, and there is one set of alleged heirs claiming through his mother, Julia Beard (Edgar) Dickens. These claimants, for the purpose of this opinion, are referred to as 'the Dickens heirs.' Another set of alleged heirs claim through Thomas William Edgar (known as Tom Edgar), who at one time was married to Julia. The second set of claimants may be referred to as the 'Edgar heirs.' It is undisputed that the Dickens are the children of Julia Beard (Edgar) Dickens, and that Claud was their half-brother on the maternal side. They are therefore heirs of the decedent without question. They claim to be the only heirs. The Edgars are children of Thomas William Edgar, and they claim that Tom Edgar, their father, was also the father of Claud, and that they are heirs of the half-blood on the paternal side.

"Since it is undisputed that the Dickens heirs are half-brothers and sisters of the decedent, the real question for determination is whether the Edgar children are entitled to inherit. The evidence goes back to 1894 and beyond.

"The Facts. On May 6, 1897, Julia Beard was married to Thomas William Edgar, and the record of their marriage appears in Book 2, at page 237, of the records of Rains County, Texas, where both lived at that time.

"Julia Beard was the mother of a male child named Claud. It is Claud's estate that is now involved in this litigation. The exact date of Claud's birth is unknown. Army records indicate that he enlisted in the U. S. Army on October 2, 1917, at the age of 22 years and 5 months. That would place his birth in April, 1895. The census report of 1900 shows the same date. Other evidence, including family history and tradition, place Claud's birth about 1894 or 1895.

"There is some inference in the pleadings as finally made up, and counsel for the Edgar heirs argues, that a common law marriage may have existed between Julia Beard and Tom Edgar prior to May 6, 1897, but there is no proof of this. In fact, all the evidence in the record on that point is to the positive effect that there was no common law marriage in Texas between these parties. So, from the testimony before the Court, two facts are firmly established by the evidence, and the Court therefore finds:

"First: The only marriage of Tom Edgar and Julia Beard was the ceremonial marriage of May 6, 1897; and

"Second: Claud was born prior to the marriage of his mother, Julia Beard, to Tom Edgar on May 6, 1897. A preponderance of the evidence is to the effect that Claud was about two years old at that time.

"There are other disputed facts involved in this hearing, but the two just mentioned are basic and furnish the starting point from which the Court must approach the other questions of law and fact herein involved.

"A preponderance of the evidence also shows that there was another son born to Julia after her marriage to Tom Edgar. His name was Edward and he was known as 'Ed.' The census report, introduced by the Edgar heirs, shows that Ed Edgar was born in February, 1898. Ed was killed in Nevada County, Arkansas, on November 14, 1916, and his death certificate shows the same birth date. Whether Ed Edgar was born in Texas or Arkansas is not clear from the evidence, but the fact that he existed is clearly established, and there is no doubt that he was the child of Julia Beard Edgar and Tom Edgar and was born during their marriage. Both of Julia's sons went by the name of 'Edgar,' the older one as Claud Edgar, and the younger as Ed Edgar.

"Subsequent to their marriage, Tom Edgar and Julia Beard Edgar moved from Texas to Nevada County, Arkansas. The exact date of this move is disputed and

cannot be definitely determined from the evidence. And, as indicated, whether Ed Edgar was born before or after the family moved to Arkansas is not clear. Be that as it may, Tom Edgar was dissatisfied in Arkansas and returned to Texas leaving his wife behind. It is not clear from the proof how long he remained, but the evidence is undisputed that he went back to Texas and that Julia Beard Edgar, his wife, and two boys, Claud and Ed, remained in Nevada County, Arkansas. After Tom's departure from Arkansas there was no contact or correspondence between him and his wife, and he never saw Julia or either of the boys again as far as the evidence shows. On the 15th day of May, 1899, Tom Edgar divorced Julia Beard Edgar in the District Court of Rains County, Texas, and a copy of that decree is in evidence here. The divorce decree of 1899 refers to one child of the marriage 'more than a year old' but no name is given. Ed Edgar would have been either 14 or 15 months old at the time.

"Subsequent to being divorced by Tom Edgar in 1899, Julia Beard Edgar later married Albert N. Dickens on September 16, 1906, and to that union was born the claimants who have been designated as 'the Dickens heirs.' Julia Beard Edgar Dickens died intestate on April 8, 1952.

"Tom Edgar remarried three times after his divorce from Julia. His second wife died. He divorced his third, and finally married Wilma Bell in 1923 as his fourth wife and the claimants who have been designated as 'Edgar heirs' are the children of Tom Edgar and Wilma Bell Edgar. Tom Edgar died on May 14, 1931.

"As already stated, Ed Edgar was killed in November 1916. He was never married. Claude entered the U. S. Army in October 1917, and became mentally incompetent while in the Army. He was entitled to compensation and, on November 20, 1920, a guardian was appointed for his estate by the Probate Court of Nevada County, Arkansas. His estate has remained under guardianship from that time until his death in 1957.

A number of persons have served as guardian during those 37 years.

"The Law. At common law a child who was not born or conceived during lawful wedlock was illegitimate and had none of the rights of a legitimate child. Such child had no right of inheritance from either parent. There is an interesting article in the Arkansas Law Review, Volume 12, No. 1, at page 118 on this subject. In modern times, however, many states allow such a child to inherit from its mother. *Daniels* v. *Johnson*, 216 Ark. 374, 226 S. W. 2d 571, 15 A. L. R. 2d 1401. And Statutes in many states provide methods whereby an illegitimate child may be made legitimate. In some states the subsequent marriage of the putative father and mother is sufficient. *In re: Estate of Elliott Ruff*, 159 Fla. 777, 32 S. 2d 840 (1947); *In Re: Lewis' Estate*, 121 Utah 385, 242 P. 2d 565 (1952). This is the minority rule. The majority rule in most States requires (a) marriage and (b) in addition, public acknowledgment or recognition of the child by its father. *Rogers* v. *Morgan*, 213 Ark. 229, 210 S. W. 2d 129 (1948). This recognition may be shown by a combination of words, acts or conduct. *In re: Estate of Sadie F. Clark*, 228 Iowa 75, 290 N. W. 13 (1940); *Lowtrip* v. *Green*, 363 Mo. 519, 252 S. W. 2d 524 (1952); *Succession of Cambre*, 210 La. 451, 27 S. W. 2d 296. Arkansas follows the majority rule in holding (a) subsequent marriage of the parents and (b) recognition of the child by its father to be sufficient acts of legitimation. Arkansas Statutes Annotated 61-103 (1947). The pertinent Statute involved in Arkansas is Section 61-103, *supra,* which reads as follows:

" 'If a man have by a woman a child or children and afterwards shall intermarry with her, and shall recognize such children to be his, they shall be deemed and considered as legitimate.'

"In *Parker* v. *Hadley*, 227 Ark. 161, 296 S. W. 2d 391, the Arkansas Supreme Court held that this Statute requires proof of three things, (1) the actual parentage of the putative father; (2) the putative father's marriage to the mother of the illegitimate child, and (3)

recognition by the putative father, after marriage, of the child as his.

"Insofar as the case at bar is concerned, the marriage of Julia Beard and Tom Edgar is conceded. But the burden was on the Edgar children to prove the other necessary elements of the Statutes as set out in *Parker* v. *Hadley, supra.* An alleged heir has the burden of establishing his or her relationship to the decedent. Therefore, in order to inherit in this case, the Edgar heirs had the burden of proving: First, that Tom Edgar was, in fact, the actual father of Claud; and Second, that Tom Edgar, after his marriage in 1897 to Julia Beard, recognized the child Claud as his son.

"After a careful examination of all of the competent evidence and exhibits in this case, the Court has concluded that the Edgar heirs have not met the burden of proof required. While the modern trend is in favor of legitimation, and while Courts have become quite lenient in requiring proof of acknowledgment, and although Statutes are liberally constructed in favor of illegitimate children, nevertheless, in Arkansas a preponderance of the evidence must show that the alleged father, was, in fact, the parent, and that he recognized the child as his own after marriage to the mother. The proof in the case at bar is not sufficient to establish those two facts."

Accordingly, we affirm the judgment. MCFADDIN, J., not participating.